MAGGIE JOHNSON v. A. M. EKLUND and Others.

May 9, 1898.

Nos. 11,096—(69).

**Contract for Sale of Land—Default in Payment—Election to Declare Void—Notice—Provision that Assignment Shall be Invalid unless Countersigned by Vendor.**

In an executory contract for the sale of real estate, the purchase money being payable in instalments, it was provided that the times of payment were of the essence of the contract; that, in default of strict and literal performance, the vendor should have the right to declare the contract null and void; that notice of the election of the vendor thus to declare the contract null and void might be served by mail, addressed to the vendee or his assigns at a specified post office. The contract further provided that no assignment of it should be valid unless countersigned by the vendor. *Held*, that a default in payment by the vendee would not ipso facto render the contract null and void; that an election on part of the vendor, and notice of that election in the manner provided in the contract, were necessary; that there was no evidence that the vendor had elected to declare the contract void, or that he had ever served notice of any such election in the manner provided in the contract. The provision that no assignment should be valid unless countersigned by the vendor was merely collateral to the main purpose of the contract, and designed as a means of securing or enforcing payment of the purchase money; and the fact that an assignment had not been

countersigned was no defense to an action by the assignee to compel specific performance, where the vendor has been paid or tendered the whole of the purchase money.

Action for specific performance of a contract for the sale of land and to determine the adverse interests of defendants therein. From a judgment in favor of plaintiff, entered in the district court for Kittson county pursuant to the findings and order of Ives, J., defendant Matilda Brenberg appealed. Affirmed.

*H. Steenerson*, for appellant.

*Albert Johnson*, for respondent.

MITCHELL, J.

On November 9, 1892, Eklund sold and agreed to convey to Swanson two lots in the town of Hallock for $125, payable, $10 immediately, $60 November 1, 1893, and $55 November 1, 1894. Time was made the essence of the contract, which provided that, in case of the nonperformance of any of its conditions, the vendor should have the right to declare the contract null and void, and that his election to do so might be made by depositing in the post office at Hallock a notice to that effect, directed to the vendee or his assigns at the post office specified at the foot of the contract (which was Hallock). The contract further provided that "no assignment of the premises * * * shall be valid unless the same shall be indorsed hereon or permanently attached hereto, and countersigned by A. M. Eklund, Jr., or his authorized agent."

At this time Eklund resided in Hallock. Swanson made the cash payment of $10, entered into possession of the premises under the contract, and built a house. On May 1, 1893, Swanson assigned the contract to the defendants Johnson and Nils Brenberg. This assignment was countersigned by Eklund. On September 7, 1893, Eklund conveyed the land subject to the contract to the defendant Sundberg. On November 1, 1893, Johnson and Brenberg paid to Sundberg the instalment of purchase money then maturing, of $60 and interest. April 3, 1894, Johnson and Brenberg, for the consideration of $430, sold and assigned the contract and all their interest in the premises to the plaintiff. This assign-

ment was never countersigned by either Eklund or Sundberg, and was never presented to either of them for that purpose.

Plaintiff took possession of the premises, and moved her personal effects into one of the rooms of the house, but permitted Swanson (who had continued all the time in the actual possession of the premises) to remain in the occupancy of the remainder of the building. The plaintiff testifies that the agreement between her and Swanson was that during his occupancy he was to pay her rent. This Swanson denies; but the evidence is undisputed that Swanson remained in possession by the consent of plaintiff, and with knowledge of her claims.

In October, 1894, plaintiff, desiring to pay the last instalment of purchase money due on the contract, and to obtain her deed, deposited the money for that purpose with the cashier of a bank in Redwood Falls, with instructions to attend to the matter for her. Prior to this, Eklund had removed from the state. About October 19, the cashier wrote to Sundberg that the contract and money were in his hands, and that the plaintiff was ready to pay the balance due on the contract when deed and abstract of title were furnished. Sundberg replied that he had sold his interest, and advised the cashier to write to one Dure, who resided in Hallock, and who, it appears, was acting as agent for both Eklund and Sundberg. As soon as the cashier received this letter, he wrote to Dure substantially what he had written to Sundberg. The exact date of the letter to Dure does not appear, but, according to the due course of mail, it presumably was before November 1. Dure made no reply.

About a month afterwards, plaintiff discovered that, on November 6, Dure, as attorney in fact for Sundberg, had, for the alleged consideration of $150, executed a deed of the lots to the defendant Matilda Brenberg, the wife of defendant Nils Brenberg. This transaction was conducted on behalf of Matilda by her husband, Nils, who, it will be remembered, was one of the parties who assigned the contract to plaintiff.

Dure's claim is that, as agent for Sundberg, he had canceled this contract for default in payment of the instalment of purchase money due November 1, 1894. The court finds that the contract

never has been canceled, and the evidence amply sustains the finding. A default in making a payment would not, ipso facto, cancel the contract. It could only be canceled, if at all, on the election of the grantor, exercised in the way provided for in the contract itself. When interrogated as to what he did by way of canceling the contract, Dure testified that he addressed a letter to Johnson and Brenberg that he wanted payment, or the contract would be canceled, and that about two weeks afterwards, not having heard from them, he canceled the contract, and, in about ten days after that, he wrote them that he had canceled it. This testimony is inconsistent with the fact that, as attorney for Sundberg, he executed a deed to Mrs. Brenberg, and delivered it to her husband six days after the last instalment of purchase money fell due. His excuse for not notifying plaintiff is that he knew nothing of the assignment to her. All the circumstances in evidence cast great doubt upon the truth of this statement, and the whole affair has the appearance of an unconscionable scheme on part of Nils Brenberg and Dure to cut the plaintiff out of her property by means of a pretended cancellation of the contract.

Although the plaintiff did not make formal tender of the money until February 18, 1895, yet the court finds that on November 1, 1894, she was ready, able and willing to pay according to the terms of the contract, and made inquiry and diligent effort to find some place to make such payment, and was unable to find any person to whom or any place at which the same could be made. This finding is in its spirit supported by the evidence. It may be, and probably is, true that plaintiff was technically in default in not tendering the money to Sundberg or Dure personally, at Hallock, on November 1, instead of resorting to correspondence by mail. But, under the facts of this case, equity would relieve her from this default, and would never permit the contract to be thus summarily canceled upon any such technical ground.

But, even assuming that the grantor or his assigns had the right to cancel the contract, yet if a party proposes to exact his pound of flesh, and stands upon the letter of the contract, the courts will hold him to an equally strict compliance with its terms. The mode of exercising the vendor's election to cancel provided for in the

contract is depositing in the post office a notice addressed to the vendee or his assigns, at "Hallock, county of Kittson, state of Minnesota." Dure was unable to say where the letters of Johnson and Brenberg were directed. It was evident, however, that it was not at Hallock. Moreover, there is no evidence that Sundberg ever elected to cancel the contract, or that he ever authorized Dure to cancel it. The most that can be claimed from the evidence is that Sundberg authorized Dure to receive the purchase money, and execute a deed of the premises. It should be stated in this connection that Mrs. Brenberg is in no position to assert any superior equities on the ground that she is an innocent purchaser for value. Her agent, her husband, who made the purchase for her, had full knowledge of plaintiff's rights.

2. We shall not enter into the consideration of the questions discussed by counsel as to the validity of the provision in the contract that no assignment of the premises should be valid unless countersigned by Eklund, the vendor, or, if valid, whether it was terminated and waived by Eklund's consent to the first assignment, or as to the effect of Eklund's having parted with all interest in the premises by his conveyance to Sundberg.

It will be noted that there is no provision that an assignment without Eklund's written approval should forfeit the contract, or give the vendor the right to declare it forfeited; and certainly the courts will not read any such right into the contract by implication. There is nothing personal in the nature of the contract. All that the vendor was interested in was the payment of the purchase money at maturity. If he received this, it was wholly immaterial to him who paid the money or who got the land. At most, this stipulation against an assignment is merely collateral to the main purpose of the contract, designed as a means of securing and enforcing performance of what was undertaken by the vendee, to-wit, the prompt payment of the purchase money. When the vendor has received all his purchase money, he has received all that he is entitled to, and all that the provision against an assignment was intended to secure. Under such circumstances, the fact that the assignment to plaintiff was not countersigned by the

vendor is no defense to an action by her to compel a conveyance. Grigg v. Landis, 21 N. J. Eq. 494.

Judgment affirmed.